NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0289n.06

No. 25-1772

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 06, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| ANDREW J. DESORMEAUX, | ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) ) | COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| KALITTA AIR, LLC, | ) | |
| Defendant-Appellee. | ) ) ) ) | OPINION |

Before: SUTTON, Chief Judge; CLAY and MURPHY, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff Andrew DesOrmeaux appeals from the district court's order and judgment in his lawsuit against Defendant Kalitta Air, LLC. DesOrmeaux sued Kalitta under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–e-17, the Americans with Disabilities Act, 42 U.S.C. §§ 12101–213, Michigan's Persons with Disabilities Civil Rights Act, Mich. Comp. Laws §§ 37.1201–1214, and Michigan's Elliott Larsen Civil Rights Act, Mich. Comp. Laws §§ 37.2101–804. The district court dismissed DesOrmeaux's Title VII and ADA retaliation claims for failure to state a claim and granted summary judgment for Kalitta on the other claims. For the reasons set forth below, we **AFFIRM** the dismissal of Counts I and III, **AFFIRM** the grant of summary judgment on Count IV, **REVERSE** the grant of summary judgment on Counts II, V, and VI, and **REMAND** for further proceedings consistent with this opinion.

## I.    BACKGROUND

Plaintiff Andrew DesOrmeaux is a pilot formerly employed by Defendant Kalitta Air, LLC ("Kalitta").  Kalitta is an air carrier, certified under the Federal Aviation Regulations, that provides cargo transportation services globally.  It concedes that it is subject to regulation by the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151–88.

DesOrmeaux had flown for Kalitta since May 2018 and was subject to the Collective Bargaining Agreement ("CBA") between Kalitta and the Air Line Pilots Association, International, in effect from March 1, 2021, to March 1, 2025.  "Under the CBA, pilots use[d] a 'seniority-based bidding system' to create their flight schedules." *Odell v. Kalitta Air, LLC*, 107 F.4th 523, 527 (6th Cir. 2024) (citation omitted).  That system permitted pilots to submit scheduling preferences, and, although it did not require Kalitta to assign anyone to a trip if that person "'lack[ed] the necessary visas, vaccines and permits[,]' . . . Kalitta '[would] use reasonable efforts to assist Crewmembers to obtain the necessary visas, vaccines, and permits.'" *Id.* (citation omitted).

In July 2021, Plaintiff DesOrmeaux received one dose of the COVID-19 vaccine and experienced a severe reaction that required medical attention.  Kalitta upgraded DesOrmeaux to Captain status in August 2021, at which point DesOrmeaux communicated to various members of Kalitta's management that he could not receive a second dose of the vaccine due to a medical condition.  One of those individuals indicated to DesOrmeaux that Kalitta would exempt him if the company were to institute a vaccine mandate.  In September 2021, DesOrmeaux tested positive for COVID-19 antibodies, indicating that he bore some immunity to the virus.

Around the same time, in September 2021, President Biden issued Executive Order 14042, requiring federal contractors to implement vaccine mandates for certain employees.  Heidi M.

Peters & L. Elaine Halchin, Cong. Rsch. Serv., IN11803, Executive Order 14042 Requirements for COVID-19 Vaccination of Federal Contractors 1–2 (2021); *see* Exec. Order No. 14042, 86 Fed. Reg. 50985 (Sept. 9, 2021) (requiring federal contractors to adhere to Safer Federal Workforce Task Force guidance). On October 11, 2021, Kalitta announced its policy requiring employees to receive full COVID-19 vaccination and advised employees that exemption requests must be submitted by October 31, 2021. Kalitta would place those employees with disabilities or religious beliefs precluding vaccination on unpaid leave beginning on December 8, 2021.

After learning of the new company policy, DesOrmeaux wrote to Kalitta's human resources department to request a medical exemption from the vaccine mandate, and an employee responded that the accommodation would comprise a leave of absence after December 8, 2021. On October 31, 2021, DesOrmeaux submitted a formal religious accommodation request based on his "God given right to have control over [his] medical care and follow the advice of [his] personal doctor[,]" asking that he be exempt from receiving the second vaccine dose and allowed to take other "mitigation" precautions instead. DesOrmeaux Decl. Ex. D, Pl.'s Resp. Opp'n Mot. Ex. 1, R. 19-1, PageID #553.

In November 2021, Kalitta sent a form letter to employees who had requested medical or religious exemptions, stating that the accommodation would be a period of unpaid leave, followed by the option between termination and voluntary resignation. On December 9, 2021, Kalitta placed DesOrmeaux on unpaid leave. And on an unspecified date, DesOrmeaux lost access to his company-provided email account and devices.

DesOrmeaux responded to Kalitta's accommodation by asserting to management that he would remain eligible to enter scheduled destinations based on his immunity status and offered supporting documentation, including proof of his first dose, a European Union Certificate of

Recovery from the German government, proof of compliance from the U.S. Air Force (for which DesOrmeaux also served as a pilot), physicians' notes, and positive antibody test results. In February 2022, Kalitta communicated that it would not change its disposition in response to DesOrmeaux's accommodation requests. The date that DesOrmeaux's employment finally terminated is not evident from the record. In July 2022, DesOrmeaux filed charges with the U.S. Equal Employment Opportunity Commission (EEOC), which provided DesOrmeaux a right-to-sue letter in February 2023.

Three months later, in May 2023, DesOrmeaux filed this lawsuit in the federal district court for the Eastern District of Michigan. He claimed that Kalitta had discriminated and retaliated against him, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–e-17, the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–213, Michigan's Persons with Disabilities Civil Rights Act, Mich. Comp. Laws §§ 37.1201–1214, and Michigan's Elliott Larsen Civil Rights Act, Mich. Comp. Laws §§ 37.2101–804, for requesting medical and religious exemptions from the company's COVID-19 vaccine mandate. The counts in DesOrmeaux's complaint are summarized as follows:

| Count I | Retaliation Under Title VII |
|---------|----------------------------|
| Count II | Failure to Accommodate Under the ADA |
| Count III | Retaliation Under the ADA |
| Count IV | Discrimination Based on Perceived or "Regarded As" Disability Under the ADA |
| Count V | Violations of Michigan's Persons with Disabilities Civil Rights Act |
| Count VI | Violations of Michigan's Elliott Larsen Civil Rights Act |

DesOrmeaux sought declaratory relief, compensatory damages, backpay, the value of lost benefits, front pay, exemplary and punitive damages, interest, costs, and attorney's fees.

The parties agreed to stay the litigation pending resolution of *Odell v. Kalitta Air, LLC*, 107 F.4th 523 (6th Cir. 2024), in which a putative class of Kalitta's employees subject to the same CBA as DesOrmeaux alleged that they were entitled to accommodations from the vaccine mandate and had their requests denied. 107 F.4th at 526–28. The parties in this litigation agreed that the outcome of the appeal in *Odell*, in which the district court had held that all claims except for the retaliation claims were preempted by the RLA, would "affect and likely be dispositive of issues in the present litigation . . . ." Order, R. 10, PageID #61 (citation omitted). This Court decided *Odell* in favor of Kalitta on July 9, 2024, 107 F.4th 523, and DesOrmeaux's instant case resumed on August 20, 2024.

Kalitta subsequently filed a motion for partial summary judgment under Federal Rule of Civil Procedure 56 and for dismissal under Federal Rule of Civil Procedure 12(b)(6). It argued that the district court should grant summary judgment on DesOrmeaux's ADA and state law discrimination claims because, under *Odell*, the RLA precluded those claims. It additionally argued that the district court should dismiss DesOrmeaux's Title VII and ADA retaliation claims for failure to state a claim because DesOrmeaux had pleaded neither protected activity under Title VII nor causation under Title VII or the ADA.

DesOrmeaux's response in opposition to Kalitta's motion focused primarily on the summary judgment argument. DesOrmeaux asserted that *Odell* did not apply to his case because he had not requested the same accommodation as the pilot plaintiffs in *Odell*. DesOrmeaux attached, among other exhibits, an extensive compilation of his own research into nearly 200 countries' COVID-19 policies for entry, indicating that he met the entry requirements for every country to which Kalitta flew routes. In its reply brief, Kalitta responded to that submission briefly in a footnote, questioning its credibility and characterizing it as "a substantive argument" as to

why "placement of Plaintiff on unpaid leave was without merit." Def.'s Reply Supp. Mot., R. 20, PageID #637 n.1.

In response to Kalitta's dismissal arguments, DesOrmeaux stated that Kalitta treated pilots who had not sought exemptions more favorably by not requiring them to be fully vaccinated and not placing them on leave. He did not present any counterargument to Kalitta's point that a religious accommodation request was not a protected activity under Title VII or that DesOrmeaux had not shown but-for causation.

The district court granted summary judgment to Kalitta on Counts II, IV, V, and VI and dismissed Counts I and III with prejudice for failure to state a claim. *DesOrmeaux v. Kalitta Air, LLC*, No. 1:23-CV-11159, 2025 WL 2245123, at *10 (E.D. Mich. Aug. 6, 2025). First, the district court concluded that *Odell* dictated the outcome for the discrimination claims. Kalitta was entitled to summary judgment on the ADA failure to accommodate claim because, like the plaintiffs in *Odell*, "Plaintiff . . . suggest[ed] Defendant could have reasonably accommodated his disability by allowing him to fly to specific countries that did not require full vaccination[,]" but the *Odell* Court had "already concluded that the reasonableness . . . of this accommodation 'would necessarily require a court to interpret the CBA[] . . . to determine . . . to what extent[] senior pilots' bidding preferences would be impacted.'" *Id.* at *6 (quoting *Odell*, 107 F.4th at 532). Any claim requiring interpretation of the CBA would be precluded by the RLA. *Id.* at *4–5.

Similarly, as in *Odell*, DesOrmeaux's perceived disability discrimination claim would eventually require interpretation of the CBA to understand Kalitta's obligations with respect to accommodations to determine whether Kalitta's reasons for its actions were pretextual. *Id.* at *6. And the same rationale applied to DesOrmeaux's state law claims, even though the *Odell* plaintiffs had not raised them, because "[t]he RLA applies equally to federal and state claims 'involving the

application or interpretation of a CBA[,]'" and "the state claims that Plaintiff pursue[d were] *identical* to those federal claims the Sixth Circuit held were precluded by the RLA." *Id.* at *7 (quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 255 (1994)).

Second, the district court dismissed DesOrmeaux's retaliation claims because DesOrmeaux had failed to plead a protected activity as required under Title VII or causation as required under the ADA. *Id.* at *8–9. The district court further provided the alternative—"simpler—reason" that DesOrmeaux had "waived his opposition to the dismissal of his retaliation claims" by providing a "perfunctory argument [that] in no way respond[ed] to Defendant's well-researched and well-explained arguments" and that "conflate[d] the motion-to-dismiss standard with that of summary judgment, and conflate[d] retaliation with discrimination." *Id.* at *10. The district court proceeded to enter judgment in favor of Kalitta.

DesOrmeaux timely appealed from that order and judgment. *See* Fed. R. App. P. 4(a)(1)(A).

## II.    DISCUSSION

DesOrmeaux's appeal distills down to two issues: (1) whether the district court properly granted summary judgment on the discrimination claims based solely on *Odell*; and (2) whether the district court properly dismissed the retaliation claims.

### A.    Standard of Review

We review *de novo* both "a district court's grant of summary judgment[,]" *Odell*, 107 F.4th at 529 (citing *Emswiler v. CSX Transp., Inc.*, 691 F.3d 782, 788 (6th Cir. 2012)), and "a district court's order granting a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)," *Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829, 832 (6th Cir. 2015) (quoting *Mik v. Fed. Home Loan Mortg. Corp.*, 743 F.3d 149, 156 (6th Cir. 2014)). When reviewing such a

dismissal, we "constru[e] the complaint in the light most favorable to the plaintiff and accept[] all factual allegations as true." *Id.* However, we typically will not consider an issue that a party has forfeited by "advert[ing] to [it] in a perfunctory manner, unaccompanied by some effort at developed argumentation . . . ." *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 843 (6th Cir.) (quoting *Strickland v. City of Detroit*, 995 F.3d 495, 511 (6th Cir. 2021)), *cert. denied*, 144 S. Ct. 2689 (2024).

### B.     Analysis

#### i.     *Summary Judgment on Counts II, IV, V, and VI*

A party is entitled to summary judgment when that party has met its burden of showing that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Emswiler*, 691 F.3d at 788 (quoting Fed. R. Civ. P. 56(a)). To defeat summary judgment, the non-movant must "present sufficient evidence from which a jury could reasonably find in his favor." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In considering the motion for summary judgment, this Court "draw[s] all reasonable inferences in favor" of the non-movant. *Id.* (citing *CSX Transp., Inc. v. United Transp. Union*, 395 F.3d 365, 368 (6th Cir. 2005)).

Congress enacted the RLA "in 1926 to promote peaceful and efficient resolution of [] disputes" that might otherwise lead to strikes interfering with railroad operation. *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 72 (2009). Under the RLA, there are two categories of disputes. Major disputes are those that involve the formation of CBAs, and minor disputes are those governed by pre-existing CBAs. *Id.* at 72 & n.1; *Norris*, 512 U.S. at 252–53, 256; *Odell*, 107 F.4th at 527. In 1936, Congress extended the RLA to cover the airline industry. *Norris*, 512 U.S. at 248 (citing Act of Apr. 10, 1936, ch.

166, sec. 201, 49 Stat. 1189 (codified at 45 U.S.C. §§ 181–188)). But, before that, in 1934, Congress amended the RLA to mandate arbitration of minor disputes that are not resolved through so-called on-the-property grievance procedures. *Stanley v. ExpressJet Airlines, Inc.*, 808 F. App'x 351, 352 (6th Cir. 2020); *Emswiler*, 691 F.3d at 785; *Odell*, 107 F.4th at 527. The issue is not jurisdictional, since those disputes raise issues arising under the RLA, which is a federal law; rather, "the failure to arbitrate impacts the plaintiff's 'ability to prove the defendant bound by the federal law asserted as the predicate for relief—a merits-related determination.'" *Emswiler*, 691 F.3d at 789 (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006)).

Stemming from that mandate is the rule that if a legal "'action is based on a matrix of facts which are inextricably intertwined with the grievance machinery of the [CBA] and of the R.L.A.,' exclusive [arbitral] jurisdiction . . . preempts the action." *Odell*, 107 F.4th at 530 (first alteration in original) (quoting *Stephens v. Norfolk & W. Ry. Co.*, 792 F.2d 576, 580 (6th Cir. 1986)). The RLA precludes a claim on the basis that it is "inextricably intertwined" with a CBA, *id.*, when "the CBA must conclusively resolve the dispute." *Stanley*, 808 F. App'x at 355 (citing *Emswiler*, 691 F.3d at 792). Invocation of the CBA as a defense is not sufficient. *Id.* Nor is mere consultation of the CBA in the course of the litigation. *Odell*, 107 F.4th at 530–31. And "'purely factual questions' about an employee's conduct or an employer's conduct and motives do not 'requir[e] a court to interpret any term of a collective-bargaining agreement.'" *Norris*, 512 U.S. at 261–62 (alteration in original) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988)).

The Sixth Circuit uses a two part test to determine whether a CBA precludes a claim because the two are "inextricably intertwined": If either (1) the case requires interpretation of the CBA, or (2) the CBA creates the rights that the plaintiff claims, the CBA precludes the claims.

*Odell*, 107 F.4th at 530; *Stanley*, 808 F. App'x at 355 (quoting *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994)). This Court has also considered the following factors: whether the CBA governs a party in the litigation, whether the claims "invoke rights or procedures under the CBA," and whether the court must address relationships and rights created by the CBA in order to resolve the dispute. *Odell*, 107 F.4th at 530 (citations omitted). The burden is on the party seeking to preclude the claim to show that the claim is precluded under the RLA. *See id.* at 531 ("Kalitta bears the burden of showing that the CBA is inextricably intertwined with the Pilot Plaintiffs' claims . . . .").

To prevail on summary judgment, Kalitta had the burden of showing there was no genuine dispute of material fact that DesOrmeaux's discrimination claims were inextricably intertwined with the CBA (Counts II, IV, V, and VI). Kalitta and the district court relied on *Odell* for that purpose. In *Odell*, several employees sued Kalitta under Title VII and the ADA, claiming that the same vaccine mandate at issue in this case discriminated against them based on their religious beliefs and disability status. *Id.* at 526. This Court affirmed the district court's order granting summary judgment to Kalitta in that case, holding that the failure to accommodate and perceived disability claims all required interpretation of the CBA. *Id.* at 529–30, 532, 534.

Analyzing the elements of the plaintiffs' claims, the Court noted that Title VII and the ADA "require[d] employers to provide reasonable accommodations for religious beliefs or disabilities[,]" but not if the employer could "demonstrate that providing such an accommodation . . . would pose undue hardship to the operation of their business . . . ." *Id.* at 531 (citing 42 U.S.C. §§ 2000e(j), 12112(b)(5)(A)). An accommodation that would violate the CBA by affecting seniority provisions, the Court said, could create an undue hardship for the accommodating employer trying to avoid liability under the CBA. *Id.* The plaintiffs were requesting adjustments

to flight schedules as an accommodation. *See id.* at 528 ("[Plaintiffs] alleged that Kalitta had the ability to make reasonable accommodations, such as . . . not scheduling unvaccinated pilots for flights to countries requiring vaccination . . . ."). A court's assessment of Kalitta's obligation to make that accommodation would involve interpreting the CBA; if those schedule adjustments would affect the seniority-based bidding process the CBA secured, they could be an undue hardship Kalitta need not undertake. *Id.* at 532. Therefore, the RLA precluded the district court from resolving the failure to accommodate claims. *Id.*

Similarly, the perceived disability discrimination claim would "eventually require that a decisionmaker evaluate the CBA." *Id.* at 534. The Court explained that if the plaintiffs could "make out a prima facie case that Kalitta discriminated against them because it regarded them as disabled," the burden would shift to Kalitta to provide "a nondiscriminatory reason for its actions," and then the burden would shift back to plaintiffs to prove that reason was pretextual. *Id.* Assessing whether Kalitta's reasons were pretextual would "entail considering the CBA's relevant provisions surrounding accommodations to evaluate Kalitta's obligations under the CBA . . . ." *Id.* Furthermore, because the plaintiffs had been fired and would "need an accommodation to continue their full employment, . . . their regarded-as claim would require a court eventually to consider the accommodation options, which would in turn require it to assess the CBA's terms." *Id.*

With all inferences drawn in his favor, DesOrmeaux has presented sufficient evidence to suggest that *Odell* might not control his failure to accommodate claim. DesOrmeaux alleged that Kalitta discriminated against him by failing to reasonably accommodate him and by treating him differently based on both his religious beliefs and Kalitta's perception that he had a disability. He asserts that his reasonable accommodation claim is based on an accommodation that he requested

that differs materially from the accommodation that the plaintiffs requested in *Odell*. The *Odell* plaintiffs sought modifications to scheduling procedures so that unvaccinated pilots could fly to destinations that would permit them entry; DesOrmeaux sought recognition that his immunity to COVID-19 was sufficient for him to continue flying to any scheduled destination without receiving a second dose of the vaccine. The district court construed DesOrmeaux's argument as submitting that DesOrmeaux could access *more* destinations than the *Odell* plaintiffs. Framed that way, DesOrmeaux's accommodation would not eliminate a scheduling burden entirely. But really DesOrmeaux's point was that Kalitta could have accommodated him without altering his flight schedules or requiring interpretation of the seniority-bidding procedures of the CBA.

Whether or not that argument will prevail is not clear from the record. It is not clear whether, as a factual matter, DesOrmeaux was eligible for entry into all of the countries to which Kalitta might have scheduled him to fly. But in his papers opposing Kalitta's motion for partial summary judgment, DesOrmeaux put forward at least some evidence that he was eligible, and Kalitta did not present evidence to the contrary. It is possible that the information in DesOrmeaux's exhibit of international COVID-19 admission policies is inaccurate. Or it is possible that certain of the countries that differentiate between fully and not fully vaccinated crew members are destinations to which Kalitta flies. In that case, scheduling DesOrmeaux for flights without a second dose of the vaccine could have required interpreting the scheduling system in the CBA. That requirement, in turn, could preclude the court from considering DesOrmeaux's claims under the RLA. But those are factual questions that require further development, and *Odell* does not resolve them.

In further proceedings, Kalitta may put forward other reasons that the RLA precludes DesOrmeaux's claims. There may be other ways in which DesOrmeaux's claims are "inextricably

intertwined" with the CBA. Perhaps the vaccine exemption DesOrmeaux desired would implicate provisions of the CBA other than the seniority-bid scheduling provision, in which case assessing the reasonableness of that request would require interpretation of the CBA. But Kalitta's argument at summary judgment and the district court's similar conclusion that, as a matter of law, interpretation of the CBA would be required in this case under *Odell* was erroneous, given the material distinction that DesOrmeaux has established. Because the district court granted summary judgment on DesOrmeaux's state law claims for the same reasons as for the federal failure to accommodate claim, *see DesOrmeaux*, 2025 WL 2245123, at *7, the same rationale applies for reversing on those counts.

Some of DesOrmeaux's other arguments are, however, foreclosed by *Odell*. DesOrmeaux makes several points about Kalitta's tendency to bypass the seniority-bid scheduling system, suggesting that the system was not mandatory. Therefore, he reasons, confirming the reasonableness of scheduling accommodations would not necessitate interpretating the CBA. But *Odell* held that determining the reasonableness of scheduling accommodations would necessarily entail interpretation of the CBA. 107 F.4th at 532. And deciding whether or not the seniority-bid provision is mandatory already concerns an interpretation of the CBA. Thus, accommodations involving scheduling changes would create a minor dispute destined for arbitration. DesOrmeaux's only remaining argument for reversal is that DesOrmeaux did not in fact seek scheduling accommodations at all.

DesOrmeaux has shown a genuine dispute of material fact as to whether the accommodation he sought differed from the accommodation requests at issue in *Odell* and whether it would have implicated the CBA in the same way. Therefore, Kalitta was not entitled to summary judgment on DesOrmeaux's ADA failure to accommodate or state law claims based on *Odell*

alone. DesOrmeaux does not, however, present any arguments as to why his ADA perceived disability discrimination claim (Count IV) differs from the analogous claim in *Odell*, and therefore he waives appellate review of the district court's denial of that claim. *See Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 610–11 (6th Cir. 2016) ("To preserve an issue for appellate review, a party is required to address the issue in its appellate briefing . . . '[and] to do more than advert to an issue in a perfunctory manner.'" (first citing *Dye v. Off. of the Racing Comm'n*, 702 F.3d 286, 304 (6th Cir. 2012); then citing *Middlebrook v. City of Bartlett*, 103 F. App'x 560, 562 (6th Cir. 2004); and then quoting *Bolden v. City of Euclid*, 595 F. App'x 464, 468 (6th Cir. 2014)).

### ii. *Dismissal of Counts I and III*

On Kalitta's motion, the district court dismissed DesOrmeaux's retaliation claims for failure to state a claim. *DesOrmeaux*, 2025 WL 2245123, at *10. "To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level' and to state a 'claim to relief that is plausible on its face.'" *Sturgill v. Am. Red Cross*, 114 F.4th 803, 807 (6th Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). We review a dismissal for failure to state a claim *de novo*, accepting the plaintiff's factual allegations, but not legal conclusions, as true. *Id.* at 807–08 (first citing *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011); and then citing *Lipman v. Budish*, 974 F.3d 726, 740 (6th Cir. 2020)).

If a plaintiff fails to make an argument in opposition to a motion to dismiss, we tend to consider that argument forfeited or waived on appeal, "unless our failure to consider the issue will result in a plain miscarriage of justice." *Heyward v. Cooper*, 88 F.4th 648, 654 (6th Cir. 2023) (quoting *In re Hood*, 319 F.3d 755, 760 (6th Cir. 2003), *aff'd and remanded sub nom. Tenn. Student*

*Assistance Corp. v. Hood*, 541 U.S. 440 (2004)); *see also, e.g.*, *KSA Enters., Inc. v. Branch Banking & Tr. Co.*, 761 F. App'x 456, 463 (6th Cir. 2019) ("A party's failure to respond to an argument raised in a motion to dismiss results in the forfeiture of that argument."); *Humphrey v. U.S. Att'y Gen.'s Off.*, 279 F. App'x 328, 331 (6th Cir. 2008) ("[W]here, as here, plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants' motions to dismiss, the arguments have been waived."). DesOrmeaux did not raise before the district court the arguments that he raises on appeal against the dismissal of his retaliation claims.

DesOrmeaux alleged that by requesting religious and medical accommodations, he had engaged in activity protected under Title VII and the ADA, respectively. He alleged that Kalitta retaliated against him for those activities by denying the reasonable accommodations he requested, placing him on unpaid leave, offering a shorter term of unpaid leave for his religious accommodation request than his medical request, refusing to engage in an interactive process, failing to change his employment status as circumstances evolved, revoking his access to company-provided email and devices, and terminating his employment.

In its motion to dismiss, Kalitta argued that DesOrmeaux had failed to allege that he had engaged in a protected activity under Title VII because "the mere request for accommodation does not constitute 'protected activity' necessary to maintain a retaliation claim under Title VII." Def.'s Mot., R. 14, PageID #108–09. And Kalitta contended that DesOrmeaux had failed to allege "but-for" causation as required for retaliation claims under both Title VII and the ADA. *Id.* at PageID #111.

Those positions find some support in our case law. Title VII protects employees from retaliation "because he has opposed any . . . unlawful employment practice [under] this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3. We have interpreted opposition under that provision to include complaining about or reporting discriminatory conduct. *See Patterson v. Kent State Univ.*, 155 F.4th 635, 647 (6th Cir. 2025) ("Reporting or protesting discriminatory practices in the workplace counts as 'protected activity' under Title VII." (quoting *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 613 (6th Cir. 2019))); *Laster v. City of Kalamazoo*, 746 F.3d 714, 729–30 (6th Cir. 2014) (explaining that Title VII prohibits retaliation for "filing of formal discrimination charges" and "complaints to management and less formal protests of discriminatory employment practices"). But at least one recent case suggests that requesting an exemption under Title VII does not fit into those categories of protected activity. *See Stanley*, 808 F. App'x at 357–58 (explaining that Title VII does not prohibit retaliation for requesting an exemption (first quoting *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019); and then citing 42 U.S.C. § 2000(e)-3(a))). *But see Bilyeu v. UT-Battelle, LLC*, 154 F.4th 396, 405 & n.2 (6th Cir. 2025) (noting that "the case law is not particularly clear" on the question whether an accommodation request is a protected activity); *Creusere v. Bd. of Educ. of City Sch. Dist. of Cincinnati*, 88 F. App'x 813, 821 (6th Cir. 2003) (stating without analysis that the plaintiff "was clearly engaged in a protected activity by requesting religious accommodation," among other actions). And the case law is clear that Title VII and ADA retaliation plaintiffs must prove but-for causation. *See Laster*, 746 F.3d at 731 (explaining that a Title VII retaliation claim demands a showing of but-for causation); *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 348–49 (6th Cir. 2021) (explaining that but-for causation means that absent the protected activity, the adverse employment action would not have occurred); *Pemberton v. Bell's Brewery, Inc.*, 150 F.4th 751, 767 (6th Cir. 2025) (explaining that the ADA requires that a plaintiff claiming retaliation show but-for causation).

In his opposition brief in the district court, DesOrmeaux's argument for his Title VII retaliation claim was that "Defendant treated pilots who did not seek an exemption more favorable [sic], including not requiring them to be fully vaccinated, and not putting them on leave when the [sic] were not fully vaccinated[,]" and "discriminated against Plaintiff when he met the entry requirements for flying into countries, but not other employees who had sought no accommodation." Pl.'s Resp. Opp'n Mot., R. 18, PageID #493 (citations omitted). He did not address Kalitta's contention that requesting a religious exemption is not a protected activity under Title VII. On the causation issue DesOrmeaux merely stated, "The same facts and argument relied upon in the [Title VII retaliation] argument section also apply to Defendant's argument for dismissing on the basis of causation." *Id.* at PageID #494. That conclusory treatment was devoid of any substantive counterargument to Kalitta's position that DesOrmeaux had not pleaded but-for causation.

Now, on appeal, DesOrmeaux presents arguments he omitted from his brief opposing Kalitta's motion to dismiss. He argues that the district court incorrectly dismissed his Title VII retaliation claims because the "protected activity" to which his complaint referred comprised not only his exemption requests but also his use of "company issued email and iPad to discuss, gather information, oppose, access relevant documents and/or policies, and otherwise investigate the issues relevant to the facts and circumstances that later made up his lawsuit" and his verbal opposition to Kalitta's allegedly discriminatory policy and activity. Pl.'s Br. 21. He additionally contends that "[t]he Sixth Circuit has consistently endorsed a liberal construction of Title VII's opposition clause that supports treating accommodation requests as protected activity" and that the Equal Employment Opportunity Commission agrees *Id.* at 23–24 (citing *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 721 (6th Cir. 2008)). On the causation issue, he argues that his refusal to

take the vaccine could not have been the actual reason for his termination, so his accommodation request must have been it. And he refutes Kalitta's forfeiture argument by noting that his opposition brief "included citations to the complaint, Declarations[, and] . . . documents" as a "substantial evidentiary offering . . . ." *Id.* at 28–29.

By failing to make those arguments before the district court, DesOrmeaux failed to preserve them and waived or, at least, forfeited them. DesOrmeaux has not presented a compelling argument that our refusal to consider the forfeited issues will result in a miscarriage of justice. Our task is to "review the case presented to the district court, rather than a better case fashioned after an unfavorable order." *Guyan Int'l, Inc. v. Pro. Benefits Adm'rs, Inc.*, 689 F.3d 793, 799 (6th Cir. 2012) (quoting *Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006)). We see no reason to make an exception to our general practice of disregarding arguments a litigant raises for the first time on appeal. *See Bryant v. Wilkie*, 834 F. App'x 170, 174–75 (6th Cir. 2020) (affirming dismissal and holding that plaintiff could not rely on argument she did not mention in response to dispositive motion at the district court). Therefore, DesOrmeaux has failed to show why the district court incorrectly dismissed his retaliation claims.

### III.   CONCLUSION

The district court erred in applying *Odell* to grant summary judgment to Kalitta on DesOrmeaux's failure to accommodate and state law claims. DesOrmeaux has failed to show, however, why the district court's application of *Odell* to his perceived disability discrimination claim or dismissal of his retaliation claims was improper. Therefore, we **AFFIRM** the dismissal of Counts I and III, **AFFIRM** the grant of summary judgment on Count IV, **REVERSE** the grant of summary judgment on Counts II, V, and VI, and **REMAND** for further proceedings consistent with this opinion.